Argued and submitted June 23, 2009, reversed as to Count 3 and remanded with instructions to merge Counts 1 and 2 and for resentencing March 3, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH BOONE HUFFMAN,
*Defendant-Appellant.*

Linn County Circuit Court
07040766; A136694

227 P3d 1206

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter

Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.*

SERCOMBE, P. J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, P. J.**

Defendant appeals from a judgment of conviction on two counts of theft in the first degree (Counts 1 and 2), ORS 164.055 (2005), *amended by* Oregon Laws 2009, chapter 16, section 3, and one count of giving false information to a peace officer for the issuance or service of a citation or an arrest warrant (Count 3), ORS 162.385 (2005), *amended by* Oregon Laws 2007, chapter 771, section 1.[1] Defendant assigns error to the trial court's denial of his motion for a judgment of acquittal on all counts and the trial court's failure to merge Counts 1 and 2 under ORS 161.067(3). We reverse as to Count 3 and remand with instructions to merge Counts 1 and 2 and for resentencing.

The following facts are undisputed. On April 3, 2007, a manager at the Costco warehouse in Albany, Oregon, was walking the store floor when he observed defendant from a distance. As the manager moved closer to defendant, the manager noticed defendant had four unopened packages containing digital cameras in his shopping cart. The manager watched defendant walk into an aisle, where defendant removed each camera, the accessories, and the manual from the camera's packaging; put each camera, the accessories, and the manuals into his shirt and pockets; and concealed

---

[1] The 2009 amendment to ORS 164.055 applies only to conduct occurring on or after January 1, 2010. Or Laws 2009, ch 16, § 8. The 2007 amendment to ORS 162.385 became effective on January 1, 2008. Because defendant's conduct occurred before those dates, we cite the versions of the statutes in effect at the time defendant's conduct occurred.

ORS 164.055 (2005) provided, in part:

"(1) A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $750 or more in any other case[.]"

ORS 162.385 (2005) provided, in part:

"(1) A person commits the crime of giving false information to a peace officer for issuance or service of a citation or an arrest warrant if the person knowingly uses or gives a false or fictitious name, address or date of birth to any peace officer for the purpose of the officer's issuing or serving the person a citation * * * or for the purpose of the officer's arresting the person on an arrest warrant * * *."

each camera's discarded packaging behind other merchandise.[2] Having placed all four cameras in his shirt, defendant then walked around for several minutes before leaving the store.

Outside of the store, the manager stopped defendant to discuss defendant's actions and to request the return of the cameras. Defendant cooperated and returned the cameras, the accessories, and the manuals to the manager. Defendant also accompanied the manager back inside to the store's general office where the manager wrote a report on the incident.

Officer Alexander of the Albany Police Department was dispatched to the Costco where he spoke first with the manager about the incident. Alexander then spoke with defendant about the incident, after having advised defendant of his rights. Defendant admitted that he was not a Costco member, that he entered the store through the exit door, that he came in initially just to walk around and look, and that, while he was there, he decided to take the cameras. Alexander asked defendant for his name. Defendant replied that his name was "Mark Boone Huffman" and that his date of birth was May 5, 1960. Alexander suspected defendant was not being truthful about who he was, and therefore asked defendant how old he was. Defendant replied that he was "38—I mean, 46."

Alexander advised defendant that he was going to be taken to jail, that he would be fingerprinted, and that Alexander "would eventually determine who [defendant] really was[.]" While in the officer's patrol car outside the Costco, defendant told Alexander, truthfully, that he was really "Joseph Boone Huffman" and that his date of birth was February 20, 1962. Defendant was ultimately indicted on the three counts indicated above.

Before trial, defendant objected to the state proceeding on two counts for theft in the first degree for the "single act" involving the four cameras. Each of the counts for theft

---

[2] The record is unclear as to whether defendant sequentially removed each camera from its packaging and placed it in his shirt before removing the next camera from its packaging, or whether defendant collectively removed all the cameras from their packaging before placing them in his shirt. For purposes of this opinion, we need not resolve that ambiguity in the record.

in the first degree was for the theft of two of the digital cameras. The total value of two cameras allegedly exceeded $750, the value required by ORS 164.055(1)(a) (2005) for the crime of first-degree theft. Defendant moved that the state be required to elect one of the counts to proceed on, and the other should then be dismissed. The trial court denied the motion, but stated:

> "[I]f there's a conviction for both charges, if the facts are as [defendant is] representing them to be that essentially these [cameras] were all taken at the same time as part of the same transaction, there's gonna end up being only one conviction in any event, because there would be a merger most likely required."

At trial, after the close of the state's evidence, defendant moved for a judgment of acquittal on each of the three counts. As to Count 3, giving false information to a peace officer for the issuance or service of a citation or an arrest warrant, defendant argued that there was no evidence to establish that defendant was being questioned as to his identity for the purpose of being issued a citation or for the service of an arrest warrant. As to Counts 1 and 2, theft in the first degree, defendant argued that, based on the testimony of the manager as to the price of the cameras, no trier of fact could find beyond a reasonable doubt what the actual register price of the cameras was on April 3.[3] The trial court denied defendant's motion, and the jury ultimately found defendant guilty on all counts.

At sentencing, defendant moved that the "two convictions [for theft] merge * * * based upon arguments that [were] previously made that this all came out of the same transaction." The trial court found that the convictions for theft in the first degree did not merge, but that the facts in the case required concurrent sentences.

---

[3] The manager testified that, when he filled out his report, he looked up the retail price of the cameras on his computer. According to the computer record, each of the cameras sold for $379.99. There was no indication, of which the manager was aware, that the cameras were subject to a rebate. However, from at least May 9 until May 31, 2007, each camera was subject to an instant rebate of $50, making the price at the register $329.99. The manager was not sure when the rebate started, but acknowledged that such rebates could be longer than 30 days.

On appeal, defendant makes three assignments of error. First, defendant assigns error to the denial of his motion for a judgment of acquittal on Count 3, giving false information to a peace officer for the issuance or service of a citation or an arrest warrant. Second, defendant assigns error to the denial of his motion for a judgment of acquittal on Counts 1 and 2, theft in the first degree. He contends that there is insufficient proof of the value of the cameras to support the conviction for first-degree theft. Third, defendant assigns error to the failure of the trial court to merge his convictions on Counts 1 and 2 under ORS 161.067(3). We write only to address defendant's first and third assignments of error and affirm without discussion defendant's second assignment of error.

■ ■ As to defendant's first assignment of error, "[w]e review the denial of a motion for a judgment of acquittal, taking the evidence in the light most favorable to the state and making any reasonable inferences, to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *State v. Rocha*, 233 Or App 1, 5, 225 P3d 45 (2009) (citing *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995)). Defendant argues that the evidence in this case was insufficient to permit a rational trier of fact to find that the state proved every element of the crime of giving false information to a peace officer for the issuance or service of a citation or arrest warrant, ORS 162.385 (2005), because the state failed to prove that defendant knew that his identifying information was being requested for that purpose. The state concedes that the trial court erred in denying defendant's motion on Count 3, because there was no evidence that Alexander ever intended to give defendant a citation, nor was there evidence that Alexander asked defendant for identification for the purpose of issuing a citation. The state also notes that the circumstances in this case did not involve a situation where an officer requested information for the purpose of arresting a person on a warrant. On the record before us, we agree with and accept the state's concession and therefore reverse defendant's conviction on Count 3.

■ As to defendant's third assignment of error, we review the trial court's ruling on whether to merge defendant's convictions for theft in the first degree for errors of law. ORS 138.220.

> "A trial court's findings of historical fact are binding on appellate courts if there is constitutionally sufficient evidence in the record to support those findings. Our function is to decide whether the trial court applied legal principles correctly to those facts. If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion."

*State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) (internal citations omitted).

The "anti-merger" statute, ORS 161.067, provides, in part:

> "(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, *must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.*"

(Emphasis added.) It is undisputed in this case that defendant's conduct involved repeated violations of the same statutory provision against the same victim. However, the parties dispute whether the violations were separated by a "sufficient pause" in defendant's conduct to afford him an opportunity to renounce his criminal intent.

Defendant argues that his convictions for theft in the first degree should have merged under ORS 161.067(3) because the four cameras were taken all at once, without a pause in defendant's criminal conduct sufficient to have afforded him an opportunity to renounce his criminal intent. By contrast, the state argues that defendant committed four separate and distinct acts of theft when he "took each camera

from the store shelf and put it in his shirt[.]" The state contends that there was a "sufficient pause" between the thefts of each of the four cameras, and thus a "sufficient pause" between the theft of the first pair of cameras and the theft of the second pair of cameras in which defendant had the opportunity to renounce his intent to steal the cameras.

■ ■ Resolving the dispute presented by the parties requires us to construe ORS 161.067(3) to ascertain the intent of those who enacted it. We determine that legislative intent by examining the text of the statute in context, along with any relevant legislative history and, if necessary, by applying relevant cannons of statutory construction.[4] *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We give statutory terms that are not defined in the statute their plain and ordinary meanings. *PGE*, 317 Or at 611.

■ The term "sufficient pause" in ORS 161.067(3) is not defined by statute; thus, we turn to the term's plain meaning. Among its various definitions, "sufficient" has been defined as "marked by quantity, scope, power, or quality to meet with the demands, wants, or needs of a situation or of a proposed use or end." *Webster's Third New Int'l Dictionary* 2284 (unabridged ed 2002). And "pause" has been defined as "**1:** a temporary stop : intermission of movement or speech : brief cessation : RESPITE * * * **3:** temporary inaction often caused by doubt or uncertainty." *Id.* at 1658. Based on the term's plain meaning, a "sufficient pause" in the context of ORS 161.067(3), is a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent.

---

[4] As has been noted before, the legislative history of ORS 161.067 is unique. *See State v. White*, 346 Or 275, 297, 211 P3d 248 (2009) (Kistler, J., concurring) (*White II*); *State v. Crotsley*, 308 Or 272, 276 n 3, 779 P2d 600 (1989). In 1985, the legislature enacted one version of the statute, codified as ORS 161.062. In 1986, the people reenacted by initiative a second version of the statute, codified as ORS 161.067. *White II*, 346 Or at 297, 297 n 4. The text of ORS 161.062(4) and ORS 161.067(3) were identical. *State v. Wise*, 150 Or App 449, 454 n 2, 946 P2d 363 (1997). In 1999, the legislature repealed ORS 161.062. Or Laws 1999, ch 136, § 1.

The Supreme Court, in considering the text of ORS 161.067(3), has also held that, for repeated violations to be separately punishable, "one crime must end before another begins." *State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006) (*White I*). We relied on *Barnum* in *State v. Sanders*, 185 Or App 125, 127, 57 P3d 963 (2005), *adh'd to as modified on recons*, 189 Or App 107, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004), where we held that two of the defendant's convictions for assault should merge. We stated:

> "[T]here is such a separation [within the meaning of ORS 161.067(3)] only if one assault ended before the other began. The mere passage of time, by itself, does not establish that one assault ended before the other began. There is no other evidence in this case that defendant's assault of the victim's legs and torso 'ended' before he attempted to hit her in the head. Because of that lack of evidence, defendant cannot be punished for both assaults."

185 Or App at 130.

In *State v. Sullivan*, 234 Or App 38, 42, 227 P3d 1186 (2010), we referred to the outcome in *Sanders* with approval and held that ORS 161.067(3) required the merger of the defendant's convictions on one count of first-degree assault and one count of second-degree assault. We noted that "[n]either eyewitness [to the assaults] described any pause whatsoever between the first kick, the throwing to the ground, or the second kick [of the victim], much less 'a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.'" 234 Or App at 42.

Unsurprisingly, we have also concluded that the simultaneous occurrence of offenses does not give rise to a "sufficient pause" for purposes of ORS 161.067(3). *See State v. Mac Donald*, 232 Or App 431, 432, 222 P3d 718 (2009) (holding that ORS 161.067(3) required the merger of the defendant's five convictions for identity theft arising from the defendant's possession of the victim's wallet, which contained various forms of the victim's personal identification); *State v. Merrick*, 224 Or App 471, 472-73, 197 P3d 624 (2008) (holding that ORS 161.067(3) required the merger of the defendant's

three convictions for first-degree possession of a forged instrument arising from one occasion when the defendant possessed several counterfeit bills).

Under controlling law, therefore, we must first determine whether defendant's theft of the first pair of cameras ended before the second theft began.[5] If it did not, then defendant's convictions for theft in the first degree must merge, and our inquiry ends. We begin by noting that the trial court made no findings of fact on which it based its ruling that defendant's convictions for theft in the first degree did not merge. Thus, if there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion. *Ehly*, 317 Or at 75.

Theft in the first degree under ORS 164.055(1)(a) (2005) occurs when "the person commits theft as defined in ORS 164.015 and * * * [t]he total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $750 or more in any other case[.]" Theft under ORS 164.015(1) occurs when, "with intent to deprive another of property or to appropriate property to the person or to a third person, the person * * * [t]akes, appropriates, obtains or withholds such property from an owner thereof[.]"

We recently have clarified that " 'takes' for purposes of ORS 164.015, requires, in addition to securing dominion or control over the personal property of another, some movement of that property." *State v. Spears*, 223 Or App 675, 697, 196 P3d 1037 (2008). Thus, in *Rocha*, we concluded that the defendant, who took a kitchen stand mixer off of a store shelf and fraudulently exchanged it for a gift card, had "committed theft of the mixer when he removed it from the shelf." 233 Or App at 7-8. In reaching that conclusion, we distinguished the defendant's actions from that of an average shopper:

---

[5] In support of its position, the state also directs us to *Wise*, 150 Or App at 453-54, which held that merger of the defendant's two convictions for theft in the first degree was not required where the defendant had taken two of the victim's firearms. *Wise*, however, was decided solely under ORS 161.062(3) and not under either ORS 161.062(4) or ORS 161.067(3). 150 Or App at 453 n 1. Thus, *Wise* does not control the issue presently before us.

"That is not to say that a shopper who removes an item from a store shelf for closer inspection or who carries it around in the store as the shopper decides whether or not to purchase it has committed theft. *Instead, defendant's movement of the mixer in this case constitutes theft because it coincided with a thieving intent.*"

*Id.* at 8 (emphasis added).

 In this case, defendant conceded at oral argument that,

"[u]nder *State v. Spears,* the theft was complete upon moving of the camera with the requisite criminal intent, however slight. So, when the store [manager] saw [defendant] with the four cameras in his basket, the theft of four cameras was complete."

Given defendant's concession and our holding in *Rocha,* we readily conclude that defendant committed theft of the cameras when he removed them from their original location and placed them in his shopping cart. However, the record is completely devoid of evidence as to how defendant acquired the cameras; for instance, there is no evidence whether defendant moved the cameras simultaneously, whether he moved them in pairs, or whether he moved them individually. Thus, there is no evidence in this record that one theft ended before the next began.[6] For that reason, we therefore hold that the trial court erred in failing to merge defendant's convictions for theft in the first degree.

Reversed as to Count 3 and remanded with instructions to merge Counts 1 and 2 and for resentencing.

---

[6] We emphasize the complete absence of evidence on "sufficient pause" in this record. This is not a record where a factual inference in favor of the state can be drawn from evidence in the record. *See State v. Barnes,* 209 Or App 332, 334, 147 P3d 936 (2006) (evaluation of merger facts in the "light most favorable to the state"). Further, even if we were to assume that defendant's criminal intent to take the cameras did not arise until he placed the cameras in his shirt, there is still no evidence in the record of a "sufficient pause" in defendant's criminal conduct that distinguishes the taking of the first pair of cameras from the taking of the second pair of cameras.