Argued and submitted November 19, 2015; convictions on Counts 1 and 2 reversed and remanded with instructions to enter judgment of conviction for one count of first-degree sexual abuse, remanded for resentencing December 14, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TANNER THOMAS DUGAN,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1200892; A156304

387 P3d 439

Neil F. Byl, Deputy Public Defender, argued the cause for the appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Wollheim, Senior Judge.

**DUNCAN, P. J.**

Defendant appeals the trial court's judgment convicting him of two counts of sexual abuse in the first degree, ORS 163.427. On appeal, defendant raises three sentencing-related assignments of error. In his first assignment, he asserts that the trial court erred by failing to merge the guilty verdicts on the two counts. As explained below, we conclude that merger was required under ORS 161.067(3), which provides for merger of guilty verdicts for crimes that are committed in a single criminal episode, violate only one statutory provision, involve only one victim, and are not separated by a sufficient pause to afford the defendant an opportunity to renounce his criminal intent. Because the trial court erred by failing to merge the guilty verdicts, we reverse and remand for resentencing; consequently, we do not reach defendant's other assignments of error.

On June 6, 2012, defendant, who was 16 years old, approached the victim, who was about 65 years old and lived in the same cul-de-sac as defendant. Defendant told the victim that he heard a cat crying in a field. The victim accompanied defendant to the field and the two began to walk through the brush. When the victim did not hear a cat, she told defendant that she was going to go home. Defendant then picked her up and continued walking through the field. After struggling to get down, the victim proceeded to return home, and defendant followed her.

Upon entering the victim's house, inside the victim's entryway, defendant grabbed the victim around the waist and kissed her on the lips. The victim asked defendant, "What are you doing? This is crazy." Defendant responded, "I want to have a relationship with you" to which the victim replied, "I'm 66. You're 16. That is crazy." Defendant unzipped the victim's sweatshirt and put his hand down her bra, touching her breast. He then put his hands down her pants and rubbed her vagina over her underwear. In response to the contact, the victim said, "What are you doing? *** You're committing a crime." Defendant said, "This is going to happen, whether you want it to or not," and continued to rub the victim's vaginal area. The victim testified that, throughout the 10-to-15 minute incident, she struggled against

defendant's grip. Eventually, the victim was able to convince defendant to leave. She then called 9-1-1. The officer who responded to the dispatch ultimately brought defendant to the Clackamas County Juvenile Reception Center.

Defendant, who was tried as an adult under ORS 137.707, waived his right to a jury trial and the trial court found him guilty of two counts of sexual abuse in the first degree, ORS 163.427. Defendant filed a sentencing memorandum, arguing that the two guilty verdicts should merge. At sentencing, the state argued that the verdicts should not merge because defendant committed the crime "in two different ways: one by touching her vaginal area; one by touching her breast." Defendant responded that the verdicts should merge because the two offenses, "according to the State's evidence, were done at exactly the same time or, if not, maybe seconds apart." The trial court clarified: "So your position is it was a continuous and uninterrupted course of conduct." Defendant responded:

> "Continuous and uninterrupted. *No pause.* No—it's not a situation where a person did a crime and then had a chance to reflect on it and then decides to commit another crime. This was all done part and parcel of the same incident, according to the evidence that was presented at trial. So there's no—there are no grounds to do anything other than merge these into one single conviction."

(Emphasis added.)

The trial court ultimately determined:

> "As to the merger issue into one conviction, my thought is that there are two separate counts and two separate convictions, because there were two violations of the same statutory provision against one victim. However, because they arose during one uninterrupted course of conduct, the Court would not be authorized to impose and it would simply not be appropriate to impose consecutive sanctions or consecutive sentences."

Thereafter, the trial court entered a judgment convicting defendant of both counts and imposing, on each count, a mandatory minimum sentence of 75 months in prison, followed by 45 months of post-prison supervision. The judgment states that the sentences are to be served concurrently.

On appeal, defendant argues that his guilty verdicts must merge into a single conviction because "the record does not show that there was a sufficient pause between the two violations to afford defendant an opportunity to renounce his criminal intent." Defendant bases his argument on ORS 161.067(3), which provides that "[w]hen the same conduct or criminal episode violates only one statutory provision and involves only one victim," in order to be separately punishable, each violation "must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." We have interpreted "sufficient pause," within the meaning of ORS 161.067(3), to mean "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). Additionally, for repeated violations to be separately punishable, "one crime must end before another begins." *Id.* at 185.

In this case, defendant asserts that we should analyze whether there was a "sufficient pause" by looking to the assault cases. Defendant contends that, in the context of assault, we have "held that when a defendant's assaultive conduct is not interrupted by a significant intervening event, the mere passage of time, by itself, does not establish a sufficient pause." He asserts that, in this case, "[o]ther than the mere passage of time necessary to complete the two acts of touching, there was no significant intervening event that so interrupted defendant's assaultive conduct as to afford him an opportunity to renounce his criminal intent," and points out that the trial court itself found that defendant's actions "arose during one uninterrupted course of conduct."

The state responds that ORS 161.067(3) does not apply in this case because defendant's two separate but successive acts of sexual contact do not constitute the "same conduct or criminal episode" within the meaning of ORS 161.067(3). The state argues that, when the statutory text is properly construed, the phrase "criminal episode" in ORS 161.067(3) is irrelevant to merger when the crime at issue involves "discrete acts." We rejected the same argument in

our recent decision in *State v. Nelson*, 282 Or App 427, 386 P3d 73 (2016), which was decided after the parties filed their briefs in this case. Consequently, we reject the argument without additional discussion in this case.

Alternatively, the state argues that the two verdicts should not merge because they were not simultaneous, but rather, "must have been sequential." The state also asserts that "[t]he victim's statements [asking defendant to stop] gave defendant ample opportunity to renounce his criminal intent, but he did so only after he had committed the two separate acts." The state reasons that "[t]he fact that [defendant] was able to stop and retreat suggests that he also had the ability to stop and retreat at an earlier point."

That argument is also unavailing under *Nelson*. As we held in *Nelson*, merger of guilty verdicts for multiple acts of sexual contact with different body parts constituting sexual abuse is proper where the defendant's conduct occurred in one location, "without interruption by any 'significant' event, and without a pause in the defendant's aggression." 282 Or App at 447. In *Nelson*, the defendant locked himself and the victim in her bathroom, reached down her shirt and touched her bare breast, forced her to touch his penis, reached down her pants and touched her vagina, and then pulled down her pants and underwear and began penetrating her sexually. The victim testified that the acts were sequential and that the attack "felt like forever"—sometime between 10 minutes and an hour. *Id.* at 444.

*Nelson* was our first decision analyzing the "sufficient pause" issue in the context of sequential sexual contacts with different body parts, so we looked to decisions addressing merger in the context of convictions for multiple counts of assault for guidance. Specifically, we examined and compared *State v. Campbell*, 265 Or App 132, 139, 333 P3d 1220 (2014), where the record reflected a "continuous and uninterrupted attack of a victim," and *State v. King*, 261 Or App 650, 656, 322 P3d 597 (2014), where "something of significance" occurred between the assaults (*i.e.*, the victim managed to temporarily subdue the defendant by wrestling him to the ground). We concluded that the case was more like *Campbell* than *King*. Specifically, we reasoned:

"This is a case where the record demonstrates only that defendant's acts occurred in sequence over a brief period of time. There is nothing in the record that would allow a nonspeculative inference that each crime was separated from the others by a sufficient pause in defendant's conduct to afford him an opportunity to renounce his criminal intent. Rather, insofar as the record reveals, the entire violent episode at issue occurred in the confined space of the bathroom, without interruption by any 'significant' event, and without a pause in the defendant's aggression."

*Nelson*, 282 Or App at 447; *see also id.* at 446 (distinguishing *State v. West-Howell*, 282 Or App 393, 401, 385 P3d 1121 (2016), in which we concluded that "something of significance" happened between the defendant's separate sexual acts when the defendant strangled the victim into unconsciousness between acts of sodomy).

Contrary to the state's argument in this case, neither the defendant's ability to retreat during the episode, nor the fact that the acts occurred in sequence, is sufficient to establish the requisite "sufficient pause" between the acts. Instead, the state must present evidence that "something of significance" occurred between the sequential acts. As in *Nelson*, the evidence in this case "does not support a nonspeculative inference that 'something of significance' occurred between the defendant's sequential acts of touching." *Id.* at 446. The record demonstrates only that defendant's acts occurred in sequence over a brief period of time, between 10 and 15 minutes, in a confined space, the victim's entryway, without interruption by any "significant" event, and without a pause in defendant's aggression. We therefore conclude that the state failed to present sufficient evidence to establish that there was a sufficient pause between defendant's two acts of sexual contact constituting sexual abuse and agree with defendant that the court should have merged the guilty verdicts for first-degree sexual abuse into a single conviction.

Convictions on Counts 1 and 2 reversed and remanded with instructions to enter judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing.